## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

YOUNG ISRAEL OF TAMPA, INC.,

    *Plaintiff,*

  v.

HILLSBOROUGH AREA
REGIONAL TRANSIT
AUTHORITY,

ADELEE LE GRAND, in her official
capacity as Chief Executive Officer
of the Hillsborough Area Regional
Transit Authority, and

RUTHIE REYES BURCKARD, in
her official capacity as Deputy Chief
of Transportation for the Hills-
borough Area Regional Transit Au-
thority,

    *Defendants.*

Civil No. _____

**COMPLAINT**

**PERMANENT INJUNCTIVE
RELIEF REQUESTED**

**DECLARATORY RELIEF
REQUESTED**

**DEMAND FOR A JURY TRIAL**

## NATURE OF THE CASE

1.   Defendants Hillsborough Area Regional Transit Authority ("HART")

and its officials have discriminated against Plaintiff Young Israel of Tampa,

Inc. ("Young Israel"), an Orthodox Jewish synagogue, by prohibiting Young Is-

rael from exercising its constitutionally protected rights of free speech and free

exercise of religion.

2.    As a member of the Tampa community, Young Israel wishes to access a widely available advertising platform—HART's transit system—to convey messages in connection with its annual religious events. Specifically, Young Israel seeks to advertise its annual Passover Seder, "Chanukah on Ice" event, and potentially other events through HART.

3.    However, HART will not allow Young Israel to purchase advertising space to convey its religious viewpoint or advertise its religious events. Instead, HART places religious messages in a prohibited category along with ads containing or promoting alcohol, tobacco, illicit drugs, obscenity, nudity, profanity, politics, pornography, discrimination, violence, or libel. This raises multiple constitutional problems.

4.    First, it discriminates against Young Israel's speech based on its religious content and viewpoint. HART has for many decades allowed a wide array of speech on its transit system. Young Israel is simply seeking to do what countless other advertisers do: advertise events on HART's transit system. Yet HART will not let Young Israel advertise these events because they include religious content and come from a religious perspective. This is textbook content and viewpoint discrimination, violating the First Amendment's Free Speech Clause.

5.    Second, the standard HART uses to evaluate advertisements is no standard at all. HART has no concrete criteria, either in written policy or in

practice, for what makes an ad "religious" and thus prohibited. Such standard-less speech regulations violate the First Amendment even in a supposedly non-public forum. And HART's transit system should be categorized as a public form, as its system is open to a wide range of speech in the classic public fora of streets and sidewalks.

6.     Third, HART is discriminating based on religion, violating the First Amendment's Free Exercise Clause. Both the plain language of HART's policy, and its application to Young Israel, establish a simple rule: religious messages need not apply. Such facially plain discrimination against religion violates the Free Exercise Clause.

7.     Finally, the process endured by Young Israel in contending with HART's policy violates the Fourteenth Amendment's guarantees of equal protection and due process.

8.     Absent judicial intervention, HART will continue discriminating against religious speech, to the detriment of Young Israel and the Tampa community. Thus, the Court should enjoin HART from enforcing its ban on religious speech, order it to comply with the Constitution, and afford Young Israel all other relief to which it is entitled—including declaratory relief and damages.

## IDENTIFICATION OF PARTIES

9.    Plaintiff Young Israel is a 501(c)(3) religious nonprofit organization located in Tampa, Florida.

10.    Defendant HART "was created by its member governments" in accordance with Fla. Stat. § 163.565 *et seq. See* Hillsborough Transit Authority Policy Manual § 110.02 (Exhibit A). It is headquartered in Tampa, Florida, and exists "to service the public transit needs of its member jurisdictions and of such areas with which HART may contract for service." *Id.* HART's member jurisdictions are the County of Hillsborough, Florida, the City of Tampa, Florida, and the City of Temple Terrace, Florida. *Id.* at § 120.01. While the Governor of Florida appoints two members to HART's board, its member jurisdictions—local governments—retain majority control. *See id.* at § 120.02(1); *see also id.* at § 120.04 (Hillsborough County appoints seven, the City of Tampa appoints three, and the City of Temple Terrace appoints one).

11.    Under its governing advertising policy, HART has selected an "Advertising Contractor" that is "responsible for the administration of the HART advertising program consistent with HART's adopted policies and guidelines and its agreement with HART." *Id.* at § 810.10(2). This includes "initially address[ing] the application of HART guidelines" to "all advertising requests." The Advertising Contractor  "refer[s]" "[a]ny question or disagreement" about the policy to a HART employee. *Id.* Here, HART administered its advertising

policy through Vector Media. The Vector Media employee initially denied Young Israel's ad per HART's policy, and then referred Young Israel's requested appeal to HART employees. HART's interim CEO ultimately denied the ad.

12.  HART's "primary mission" with its advertising policy is to "establish[] a favorable environment" and "ensure that the advertisement is not offensive to HART customers and the community." *Id.* at § 810.10(1). Revenues from the policy are used "to supplement un-funded operating costs, while maximizing transit services revenue by attracting, maintaining, and increasing ridership." *Id.*

13.  Defendant Adelee Le Grand is HART's Chief Executive Officer. The CEO is HART's chief staff officer and is responsible for implementing HART's policies. *Id.* at § 140.02(1). Under the governing advertising policy, the CEO or her designee has "final resolution" authority over disputes regarding application of the HART advertising policy. *Id.* at § 810.10(2). Le Grand is sued in her official capacity and her actions are actions under color of law.

14.  Defendant Ruthie Reyes Burckard was HART's interim CEO at the time HART applied its unconstitutional policy to Young Israel as alleged below. Burckard is currently HART's Deputy Chief of Transportation. Burckard is sued in her official capacity and her actions are actions under color of state law.

## JURISDICTION AND VENUE

15.   This case arises under the Constitution of the United States. The Court has jurisdiction pursuant to 28 U.S.C. § 1331, as the case presents substantial federal questions concerning a deprivation of constitutional rights, *see* 42 U.S.C. § 1983, and under 28 U.S.C. § 1343, as Young Israel challenges a deprivation of constitutional rights committed under color of state law.

16.   Venue is proper here, as this is the district in which substantial events giving rise to the complaint occurred and in which Defendants reside. *See* 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

### A. Young Israel

17.   Young Israel is an Orthodox Jewish synagogue serving the Jewish community of Tampa Bay.

18.   Young Israel's mission is to provide its community a "place to experience the warmth and joy of Torah Judaism," fostering "spiritual growth" and helping to ensure "the future of the Jewish people."

19.   To that end, Young Israel offers daily religious services, provides regular classes on subjects ranging from Torah to cooking to the Hebrew language, and is a hub of daily life for the Jewish community.

20.  Young Israel also serves the Jewish community at the University of South Florida and actively participates in the broader Tampa community through outreach and charitable endeavors.

21.   One way in which Young Israel celebrates its faith and serves the community is by hosting an annual Chanukah celebration.

22.  Chanukah is an eight-night religious festival, typically observed in December, that commemorates the rededication of the Temple in Jerusalem in the 2nd century B.C.E. Jews celebrate Chanukah as a time of hope and renewal for the Jewish people.

23.  One of the central and most widely recognized features of the Jewish celebration of Chanukah is the lighting of a nine-branched candelabrum called a menorah or chanukiah.

24.  For at least the last fourteen years, as part of its observance of the festival, Young Israel has held a public celebration called "Chanukah on Ice," which provides Young Israel an opportunity to share the joy of the season with any in the Tampa community. The family-friendly event features ice-skating, food, music, a raffle, and the lighting of an ice-sculpted menorah. Young Israel charges a small admission fee to attend.

25.  Although Chanukah on Ice had to be canceled in December 2020 due to COVID-19, Young Israel intends to hold the event in 2021 and future years.

26. Young Israel also celebrates its faith and serves the community by hosting Passover Seders. These are ritual meals celebrated during Passover to commemorate the liberation of the Israelites from oppression in Egypt. Anyone is welcome to attend Young Israel's Seder provided they purchase a ticket for a small fee.

27. Young Israel has hosted public Passover Seders annually for at least 33 years. Although the 2020 celebration could not be open to the public due to COVID-19, the Seder offers a unique opportunity to share Jewish faith and culture. Thus, public-health circumstances permitting, Young Israel intends to publicize its next Passover Seder scheduled for March 2021.

28. Chanukah on Ice and Passover Seders are just two of several events that Young Israel hosts throughout the year. Others include cooking clubs, barbecues, and observance of the High Holy Days.

29. Events such as the Seders and Chanukah on Ice allow Young Israel to promote its religious mission and engage the Tampa community. This year, Young Israel intends to raise money for a *mikvah*—a ritual bath used in Judaism.

30. These events—and the advertising Young Israel does to promote them—also help to spread the word about Young Israel to Jews and anyone interested in Judaism in the Tampa area who otherwise might be unaware of Young Israel's existence. Hillsborough County has long had a large Jewish

population, and the Orthodox Jewish community in and around Tampa is growing. Young Israel seeks to "welcom[e] all Jews, from the most observant to those just returning to their heritage." Community events and advertising provide a vital means for fulfilling this mission.

### B. HART and its Advertising Policy

31.  HART is the government agency charged with operating mass transit and supplying transportation assistance in Hillsborough County and the City of Tampa. HART's services include a fleet of nearly 200 buses and a historic streetcar line, which together serve an area of approximately 1,000 square miles.

32.  HART has an annual budget of approximately $112 million. It finances its activities in part through selling advertisements on buses, the streetcar line, and bus shelters. HART's advertising placements bring in around $1 million annually.

33.  HART's advertising sales are governed by an "Advertising Policy" appearing in its Policy Manual. *See* Exhibit A. An "objective" in selling advertisements is "to maximize advertising revenues." *Id.* § 810.10(1).

34.  The policy provides that the "advertising accepted is intended to be strictly commercial in nature … with limited Governmental Entity Public Service Announcements." *Id.* HART will "endeavor[]" to ensure that advertisements placed with it are not "offensive." *Id.*

35.   The policy states that advertisements must not graphically describe or represent "sexual conduct" and must not "demean[] or disparage[] an individual or group." *Id.* § 810.10(3)(a)-(b).

36.   The policy also includes a list of specific "[p]rohibitions," which are categorical restrictions on the "types of advertising" that may be placed on HART vehicles or property. *Id.* § 810.10(4).

37.   The list of "[p]rohibitions" includes advertisements for alcohol and tobacco products, advertisements containing profanity or "discriminatory materials and/or messages," advertisements for firearms or showing violence, various political advertisements, false or deceptive advertising, and advertisements that could subject HART to litigation (e.g., ads that are libelous or infringe on copyrights).  *See id.* § 810.10(4).

38.   Also included on the list of prohibitions are any "[a]dvertisement[s] that primarily promote a religious faith or religious organization." *Id.* § 810.10(4)(e).

39.   The policy thus by its terms associates religious speech with pornography, discrimination, violence, falsehoods, libel, and illegal activity. It also bans advertisements based on their religious content and viewpoint ("promot[ing] a religious faith") and based on the advertiser's religious status ("religious organization[s]").

### C. HART's Inconsistent and Arbitrary Enforcement

40.  Although HART's ban on religious advertising has been in place since at least 2008, it has been applied inconsistently and arbitrarily.

41.  From 2012 to 2013, HART permitted advertisements for St. Leo University, a Catholic university "[r]ooted in the 1,500-year-old Benedictine tradition" and whose mission is to "seek[] balanced growth in mind, body, and spirit for all members of its community."

42.  Likewise, in 2013, the Center for American-Islamic Relations (CAIR) sought to run advertisements for its #MyJihad campaign—a public-education effort to explain the true understanding of the term "jihad." HART initially denied CAIR's request, but ultimately permitted the advertisements to run.

43.  HART has also run advertisements for Alcoholics Anonymous, whose twelve-step recovery program integrates spirituality and asking God for forgiveness and help in the path to recovery.

44.  HART revised its advertising policy in 2013 following controversy over the CAIR advertisements. In the revision, HART maintained the same list of "prohibitions" as before but added (*inter alia*) the current language stating that "advertising accepted is intended to be strictly commercial in nature … with limited" public service announcements. Exhibit A § 810.10(1).

45.  According to HART's then-General Counsel, the purpose of this change was "to try to craft a policy that minimizes the need to file lawsuits and minimizes the opportunity for lawsuits to be successful."

46.  HART board members recognized at the time, however, that the revised policy still left room for arbitrary enforcement. As HART's then-General Counsel conceded, certain terms in the revised policy would still be "controversial" and "some debate" would remain "with respect to how strongly the policy is limited to commercial speech."

47.  Another HART board member likewise pointed out that HART's effort to police whether an advertisement is "offensive" is inherently problematic because "what is offensive to one rider may not be offensive to another rider."

48.  Despite the 2013 revisions, HART has not in practice limited advertising to "commercial" advertisements and "Governmental Entity Public Service Announcements."

49.  For example, HART has continued to run advertisements for private nonprofit groups, such as the United Way and the Vinik Family Foundation. At least some of these advertisements have been run at discounted rates. It also continues to allow non-profit ads promoting resources to combat human trafficking.

50.  HART has also decorated its buses in Christmas-holiday themes for "Stuff-a-Bus" charitable projects. As a HART board member acknowledged in

2013, such advertisements would likely be prohibited by application of the 2013 policy according to its plain terms.

51.  HART also allows even ostensibly "commercial" ads to run with overtly political messages. For example, HART allowed "Rhino Lawyers" to run an ad with a poster containing the political slogan "No Human Being Is Illegal."

### D. HART's Rejection of Young Israel's Chanukah on Ice Advertisement

52.  Prior to the spike in COVID-19 cases in late 2020, Young Israel intended to hold its Chanukah on Ice celebration at AdventHealth Center Ice rink on December 17, 2020, as it did in 2019. Young Israel sought to promote and generate interest in the event through advertising.

53.  For the past several years, Young Israel has published an ad promoting Chanukah on Ice as part of its attempt to welcome in anyone interested in the Young Israel community or in the Jewish faith generally during the holiday season. Prior to 2020, Young Israel ran its Chanukah on Ice advertisements online and in specifically Jewish media.

54.  For 2020, however, Young Israel sought to expand its advertising by placing Chanukah on Ice advertisements with HART. As Young Israel recognized, transit advertising provides high visibility with consistent daily views by drivers, passengers, and pedestrians. Moreover, the event's planned

venue—the AdventHealth Center Ice rink—is located on one HART bus line (275LX) and near another (the Local Route 400 Metro Rapid).

55. In accordance with its Advertising Policy, HART has designated an "Advertising Contractor"—Vector Media—to administer its advertising program and accept submissions. Exhibit A § 810.10(2).

56. On October 30, 2020, Young Israel of Tampa's Vice President, Rabbi Uriel Rivkin, submitted Young Israel's Chanukah on Ice advertisement to the relevant Vector representative for purposes of running the advertisement with HART. Exhibit B.

57. The ad states: "Young Israel of Tampa presents 14th Annual Chanukah on Ice." It includes a prominent menorah, describes features of the celebration, and notes the $5 admission fee. The ad is reproduced below:

58.



59.  On November 2, 2020, HART's contractor (Vector Media) refused to place Young Israel's advertisement, explaining: "HART does not allow religious affiliation advertising, as well as banning adult, alcohol, tobacco, and political ads." Exhibit C.

60.  Expressing his "disappoint[ment]" with this decision, Rabbi Rivkin sought to address the issue with another representative. In response, the representative attached a copy of HART's Advertising Policy and directed Rabbi Rivkin to the religious advertising ban now appearing in § 810.10(4)(e) (the attached copy was the 2008 version). Exhibit D.

61.  Under HART's Advertising Policy, those aggrieved by the application of the policy in the first instance may "appeal" to HART's CEO "for final resolution." Rabbi Rivkin first made that request on November 13. Exhibit E.  On November 25, having not received a decision and with Chanukah on the horizon, Rabbi Rivkin sent a letter to Defendant Burckard, then HART's interim CEO, seeking review of the denial of Young Israel's advertisement. Exhibit F.

62.  Two weeks later, on December 7, 2020, a representative of HART called Rabbi Rivkin to let him know that HART was discussing Young Israel's ad.

63.  The following day, December 8, 2020, HART sent Young Israel a markup of its ad with two "suggested edits." First, HART stated that Young Israel should remove the advertisement's central illustration—a menorah. Second, HART proposed deleting all references to the menorah from the

advertisement's text, as follows: "Featuring ~~lighting of a sculpted Grand Ice Menorah and~~ ice skating to Jewish music ~~around the flaming menorah~~, Arts & Crafts, Kosher Food Stand, Latkes & a Special Raffle!" Exhibit G.

64. On December 14, Rabbi Rivkin replied to HART, thanking them for their response, but noting: "the lighting of the menorah is a central aspect of the Orthodox Jewish celebration of Chanukah. Thus, your changes are both offensive and not possible to make. Please let me know if HART will accept the ad as originally designed." Exhibit H.

65. On December 15, 2020, Burckard responded by issuing a written rejection of the ad as originally designed. Exhibit I.

66. HART's rejection of the ad, and its written policy of excluding religious speech, violates the First and Fourteenth Amendments.

67. Absent HART's unconstitutional policy, Young Israel desires and has concrete plans to advertise on HART's transit system in the future. Specifically, Young Israel would like to advertise its Passover Seder scheduled for March of 2021 (and future years) and its next Chanukah on Ice scheduled for December of 2021 (and future years). Young Israel also wants to have HART advertising as an option for promoting other future events.

68. Young Israel will suffer irreparable harm to its constitutional rights if it is excluded from HART advertising spaces simply because of its religious status, religious viewpoint, and the religious content of its advertisements.

HART's policy chills Young Israel's speech by deterring and preventing it from advertising with HART. HART's policy has also caused Young Israel irreparable constitutional injury by preventing Young Israel from reaching other members of the Tampa community with its religious message.

69.   Attempting to comply with HART's unconstitutional policy also diverted Rabbi Rivkin's time, resources, and attention from Chanukah preparations and other religious duties. And the unconstitutional policy could suppress attendance at Young Israel's future events, such as its Passover Seder in March of 2021 and Chanukah on Ice in December 2021.

## CLAIMS FOR RELIEF
### Count I
### 42 U.S.C. § 1983
### First Amendment Freedom of Speech:
### Facial Content and Viewpoint Discrimination

70.   Young Israel incorporates by reference all preceding paragraphs.

71.   The prohibition against "[a]dvertisements that primarily promote a religious faith or religious organization" in HART's advertising policy is facially unconstitutional as it deprives religious advertisers or advertisers who wish to convey a religious message of their right to engage in protected speech in violation of the Free Speech Clause of the First Amendment, as incorporated by the Fourteenth Amendment.

72.   On its face, the prohibition on "[a]dvertisements that primarily promote a religious faith or religious organization" in HART's advertising policy

is content-based and viewpoint-based discrimination in violation of the Free Speech Clause of the First Amendment.

73. That prohibition cannot satisfy strict (or any other level of) scrutiny.

74. HART cannot avoid First Amendment scrutiny by simply claiming that its advertising space is not a public forum.

75. As an initial matter, a space that traverses the classic public fora of streets and sidewalks—like the side of a bus, a bus shelter, or a billboard—is part of a public forum.

76. Alternatively, HART has made space available for speech—thus it has created at the very least a limited public forum.

77. But regardless of the forum designation—indeed, even if HART's advertising space is a nonpublic forum—viewpoint discrimination is never permissible. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

78. Forbidding religious viewpoints as a matter of policy is viewpoint discrimination. *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 110-11 (2001) (holding that "quintessentially religious" views cannot be excluded by claiming to forbid religion as a subject matter); *Rosenberger*, 515 U.S. at 831 ("Religion may be a vast area of inquiry, but it also provides, as it did here, a specific premise, a perspective, a standpoint from which a variety of subjects

may be discussed and considered."); *accord Ne. Pa. Freethought Soc'y v. Cty. of Lackawanna Transit Sys.*, 938 F.3d 424, 437 (3d Cir. 2019).

79.   HART's policy, as written, allows secular messages regarding holidays and organizational promotion—both commercial and charitable (such as with its Stuff-a-Bus campaign). But the policy itself specifically excludes messages on holidays or organizational promotion if they contain religious viewpoints or promote religious organizations.

80.   HART's policy, as written, also discriminates against religious content.

81.   HART has therefore violated the First Amendment by impermissibly engaging in content-based and viewpoint discrimination.

82.   Nor is avoiding offense to riders an acceptable justification for religious viewpoint discrimination. *See Ne. Pa. Freethought Soc'y*, 938 F.3d at 439; *accord Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017) (giving offense is a viewpoint).

83.   As a result of Defendants' violation of the Free Speech Clause of the First Amendment, Young Israel has suffered and will suffer irreparable harm, including the loss of its constitutional rights, and is entitled to injunctive, declaratory, and monetary relief.

## Count II
### 42 U.S.C. § 1983
### First Amendment Freedom of Speech:
### As-Applied Content and Viewpoint Discrimination

84.   Young Israel incorporates by reference all preceding paragraphs.

85.  The prohibition on "[a]dvertisements that primarily promote a religious faith or religious organization" in HART's advertising policy, as applied to Young Israel's request to run its Chanukah on Ice advertisement, discriminates against Young Israel's messages in violation of the Free Speech Clause of the First Amendment, as incorporated by the Fourteenth Amendment.

86.  For the reasons explained in Count I, HART's denial of Young Israel's proposed advertisement on the grounds that it did not conform with HART's advertisement policy is unconstitutional.

87.  The policy also creates an unreasonable and disproportionate burden on the exercise of Young Israel's speech without any legitimate justification.

88.  Forbidding Young Israel's overtly religious advertisement is not a reasonable restriction in light of the purpose of the forum and the surrounding circumstances.

89.  HART claims that its aim in allowing advertising is to raise revenue. Yet Young Israel is ready and willing to purchase the advertisement space. And Young Israel's ad, like those HART agrees to run, proposed a commercial transaction.

90.  HART also can demonstrate no interest—much less the compelling interest required by strict scrutiny—in preventing Young Israel from running overtly religious advertisements.

91.  HART's purported efforts to prevent offense to riders and viewers in public places does not constitute a sufficiently compelling interest. And its burdening all religious speech is not narrowly tailored to achieve a permissible interest.

92.  As a result of Defendants' violation of the Free Speech Clause of the First Amendment, Young Israel has suffered and will suffer irreparable harm, including the loss of its constitutional rights, and is entitled to injunctive, declaratory, and monetary relief.

**Count III**
**42 U.S.C. § 1983**
**First Amendment Freedom of Speech:**
**Facially Arbitrary Speech Restrictions**

93.  Young Israel incorporates by reference all preceding paragraphs.

94.  The prohibition on "[a]dvertisements that primarily promote a religious faith or religious organization" in HART's advertising policy facially violates the First Amendment by granting public officials unbridled discretion such that an official's decision to limit speech is not constrained by objective criteria, but may rest on ambiguous and subjective grounds. Unconstitutionally vague policies "trap the innocent by not providing fair warning," "foster arbitrary and discriminatory application," and "inhibit protected expression by inducing citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Buckley v. Valeo*, 424 U.S. 1, 41

n.48 (1976) (*per curiam*) (cleaned up). Because HART's policy embodies these flaws, it is unconstitutionally vague and violates the First Amendment, as incorporated by the Fourteenth Amendment.

95.  Prior to the advertisement policy's promulgation, several board members raised questions about how broadly or narrowly the policy would be enforced. At the HART Board of Directors meeting on September 23, 2013, Councilmember Mike Suarez feared that advertisements about Dr. Martin Luther King, Jr. could run afoul of the policy because Dr. King was a minister and a member of the Southern Christian Leadership Conference. While Councilmember Suarez's comments referred to the 2012 policy, the language prohibiting "[a]dvertisements that primarily promote a religious faith or religious organization" did not change.

96.  The policy provides no objective guide for distinguishing between permissible and impermissible advertisements in a non-arbitrary, viewpoint-neutral manner.

97.  Defendants' policy does not explain what makes an ad qualify as promoting or opposing religion.

98.  Simply claiming that its advertising space is not a public forum does not give HART unbridled discretion accept or reject ads based on the viewpoints expressed.

99.   Under the First Amendment, even nonpublic forums require a "sensible basis for distinguishing what may come in from what must stay out." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1888 (2018); *see also Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.*, 978 F.3d 481, 494-95 (6th Cir. 2020) (no official guidance on workable standard violates First Amendment).

100. As a result of Defendants' violation of the Free Speech Clause of the First Amendment, Young Israel has suffered and will suffer irreparable harm, including the loss of its constitutional rights, and is entitled to injunctive, declaratory, and monetary relief.

**Count IV**

**42 U.S.C. § 1983**
**First Amendment Freedom of Speech:**
**As-Applied Arbitrary Speech Restrictions**

101. Young Israel incorporates by reference all preceding paragraphs.

102. Through the prohibition against "[a]dvertisements that primarily promote a religious faith or religious organization" in HART's advertising policy, Defendants have arbitrarily denied Young Israel the ability to engage in protected speech. This unconstitutionally vague application of HART's advertising policy violates the Free Speech Clause of the First Amendment, as incorporated by the Fourteenth Amendment.

103. After trying to make Young Israel remove religious aspects of its message as a condition for running the Chanukah on Ice ad, HART arbitrarily denied Young Israel the opportunity to run its ad on the basis that it was a religious advertisement precluded by HART's advertising policy.

104. Yet HART has allowed other advertisements by religious organizations or ads with religious or spiritual content to run in the past, notwithstanding its prohibition on "[a]dvertisements that primarily promote a religious faith or religious organization."

105. HART's advertisement policy has prohibited "[a]dvertisements that primarily promote a religious faith or religious organization" since at least September 2008.

106. In spite of this, HART accepted advertisements by Saint Leo University, a religious organization.

107. Similarly, HART has accepted advertisements for Alcoholics Anonymous, a group that uses religious belief and spirituality to help its members combat addiction.

108. HART also allowed an advertisement by CAIR, which is an organization dedicated to fostering sympathy toward members of a religion (Islam) and ran an advertisement about the meaning of a religious term (jihad).

109. The discriminatory and arbitrary enforcement of HART's policy violates Young Israel's First Amendment rights. In years past, HART allowed

CAIR's "#MyJihad" ad to run, but another group's counter-ad was denied. St. Leo's and Alcoholics Anonymous ads, promoting religious organizations and religious missions can run, but Young Israel's Chanukah on Ice ad cannot.

110. It is therefore impossible for Young Israel, or anyone else looking to convey a religious message, to know whether and how HART will apply its policy.

111. As a result of Defendants' violation of the Free Speech Clause of the First Amendment, Young Israel has suffered and will suffer irreparable harm, including the loss of its constitutional rights, and is entitled to injunctive, declaratory, and monetary relief.

## Count V

### 42 U.S.C. § 1983
### First Amendment Free Exercise of Religion:
### Discrimination Against Religion

112. Young Israel incorporates by reference all preceding paragraphs.

113. Through the prohibition against "[a]dvertisements that primarily promote a religious faith or religious organization" in HART's advertising policy, Defendants have targeted religious beliefs and religious status for disfavored treatment. This is "never permissible." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993); *see also Emp. Div. v. Smith*, 494 U.S. 872, 877 (1990) (Free Exercise Clause "obviously" prohibits "special disabilities on the basis of religious views or religious status" (citing *McDaniel v.*

*Paty*, 435 U.S. 618 (1978)). The policy therefore violates the Free Exercise Clause of the First Amendment, as incorporated by the Fourteenth Amendment.

114. The policy is neither neutral toward religion nor generally applicable. The policy explicitly targets religion; it disfavors religious speech and religious organizations compared with non-religious speech and non-religious organizations; it exempts non-religious speech and non-religious organizations while refusing to exempt religious speech and religious organizations; and it has been selectively enforced.

115. Because Defendants' policy explicitly targets religion, it is invalid. The Court need not even determine whether Defendants can defend the policy by proving a compelling governmental interest that is narrowly tailored to meet that interest. *See, e.g.*, *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1732 (2018) (concluding that "official expressions of hostility" to religion are "inconsistent with what the Free Exercise Clause requires," without needing to apply strict scrutiny); *id.* at 1734 (Gorsuch & Alito, JJ., concurring) ("judgmental dismissal of a sincerely held religious belief . . . cannot begin to satisfy strict scrutiny").

116. At minimum, the policy is "subject to 'the strictest scrutiny,'" which it cannot satisfy. *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2257 (2020)

(quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2022 (2017)).

117. The prohibition on "[a]dvertisements that primarily promote a religious faith or religious organization" furthers no compelling governmental interest. Keeping HART's riders from experiencing offense over advertisements with overtly religious topics or by religious speakers is not a compelling governmental interest. *See, e.g., Hurley v. Irish Am. Gay, Lesbian & Bisexual Grp.*, 515 U.S. 557, 579 (1995) ("While the law is free to promote all sorts of conduct in place of harmful behavior, it is not free to interfere with speech for no better reason than promoting an approved message or discouraging a favored one, however enlightened either purpose may strike the government.").

118. Nor is the prohibition on "[a]dvertisements that primarily promote a religious faith or religious organization" narrowly tailored to advance any compelling governmental interest.

119. As a result of Defendants' violation of the Free Exercise Clause of the First Amendment, Young Israel has suffered and will suffer irreparable harm, including the loss of its constitutional rights, and is entitled to injunctive, declaratory, and monetary relief.

## Count VI
## 42 U.S.C. § 1983
## Fourteenth Amendment:
## Equal Protection

120. Young Israel incorporates by reference all preceding paragraphs.

121. Through the prohibition against "[a]dvertisements that primarily promote a religious faith or religious organization" in HART's advertising policy, Defendants have violated Young Israel's rights under the Equal Protection Clause of the Fourteenth Amendment.

122. The Equal Protection Clause prohibits HART from denying Young Israel equal protection of the laws.

123. The prohibition on "[a]dvertisements that primarily promote a religious faith or religious organization" in HART's advertising policy as applied to Young Israel's request to place advertisements for the Chanukah on Ice campaign, denies Young Israel equal protection.

124. The prohibition on "[a]dvertisements that primarily promote a religious faith or religious organization" in HART's advertising policy has no rational basis.

125. The prohibition on "[a]dvertisements that primarily promote a religious faith or religious organization" in HART's advertising policy is not narrowly tailored to advance any compelling governmental interest.

126. As a result of Defendants violation of the Equal Protection Clause, Young Israel has suffered and will suffer irreparable harm, including the loss of its constitutional rights, and is entitled to injunctive, declaratory, and monetary relief.

**Count VII**
**42 U.S.C. § 1983**
**Fourteenth Amendment:**
**Due Process**

127. Young Israel incorporates by reference all preceding paragraphs.

128.  Through the prohibition against "[a]dvertisements that primarily promote a religious faith or religious organization" in HART's advertising policy, Defendants have violated Young Israel's rights under the Due Process Clause of the Fourteenth Amendment.

129. The Due Process Clause guarantees Young Israel a constitutionally valid process when it submits advertisements for consideration to HART. By subjecting advertisements to additional scrutiny simply to determine whether they "primarily promote a religious faith or religious organization," that guarantee has been denied.

130. As a result of Defendants' violation of the Due Process Clause of the Fourteenth Amendment, Young Israel has suffered and will suffer irreparable harm, including the loss of its constitutional rights, and is entitled to injunctive, declaratory, and monetary relief.

## JURY DEMAND

Young Israel requests a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Young Israel requests that the Court:

a. Enter a declaration that the prohibition against "[a]dvertisements that primarily promote a religious faith or religious organization" in HART's advertising policy violates the rights of Young Israel under the Free Speech Clause of the First Amendment;

b. Enter a declaration that HART's rejection of Young Israel's Chanukah on Ice advertisement violates the Free Speech Clause of the First Amendment;

c. Enter a declaration that the prohibition against "[a]dvertisements that primarily promote a religious faith or religious organization" in HART's advertising policy violates the rights of Young Israel under the Free Exercise Clause of the First Amendment;

d. Enter a declaration that the prohibition against "[a]dvertisements that primarily promote a religious faith or religious organization" in HART's advertising policy violates the rights of Young Israel under the Equal Protection Clause of the Fourteenth Amendment;

e. Enter a declaration that the prohibition against "[a]dvertisements that primarily promote a religious faith or religious organization" in HART's

advertising policy violates the rights of Young Israel under the Due Process Clause of the Fourteenth Amendment;

f. Enter an injunction permanently preventing Defendants from enforcing the prohibition against "[a]dvertisements that primarily promote a religious faith or religious organization," and require full compliance with the U.S. Constitution;

g. Award nominal damages to Young Israel;

h. Award actual damages to Young Israel;

i. Award attorneys' fees and costs to Young Israel under 42 U.S.C. § 1988; and

j. Award such other relief as the Court may deem just and proper.

Dated: February 5, 2021                     Respectfully submitted,

Howard Slugh                                /s/ *Luke Goodrich*
  (special admission motion pending)    Luke Goodrich
Jewish Coalition for Religious                (special admission motion pending)
  Liberty                                  **Lead Counsel**
2400 Virginia Avenue N.W.                   William J. Haun
Apt C619                                      (special admission motion pending)
Washington, D.C. 20037                      Joseph Davis
Telephone: (954) 328-9461                     (special admission motion pending)
Email: hslugh@jcrl.org                      The Becket Fund for Religious
                                              Liberty
                                            1919 Pennsylvania Ave NW
                                            Suite 400
                                            Washington, D.C. 20006

Telephone: (202) 955-0095
Facsimile: (202) 955-0090
Email: lgoodrich@becketlaw.org

Edward M. Wenger
FBN 85568
Hopping Green & Sams
119 South Monroe Street, Suite 300
Tallahassee, Florida 32301
Telephone: (850) 222-7500
Facsimile: (850) 224-8551
Email: EdW@hgslaw.com

*Counsel for Plaintiff*